UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF<br><br>DIEGO MARADONA HAVAL SAED | Case No. 24-mj-70178-MAG-1  (JST)<br><br>**ORDER GRANTING MOTION TO VACATE ORDER OF RELEASE**<br>Re: ECF No. 27 |

Before the Court is the Government's motion to vacate the magistrate judge's order granting release of Diego Maradona Haval Saed pending his extradition proceedings. ECF No. 27. The Court will grant the motion.

## I.   BACKGROUND

Because the facts of this case are familiar to the parties and are detailed in the magistrate judge's underlying order, ECF No. 17, the Court provides only a summary here.

Saed is charged in Canada with one count of trafficking a controlled substance in violation of section 5(1) of the Controlled Drugs and Substances Act, S.C. 1996, c. 19 ("CDSA") and three counts of possession for the purposes of trafficking a controlled substance contrary to section 5(2) of the CDSA while working within an organized criminal organization. ECF No. 27 at 9.[1]

Saed was initially arrested in Canada on May 31, 2021, during an investigation into a suspected organized drug operation. *Id.* at 11. He was released, and the investigation continued. *Id.* In February 2022, Saed entered the United States. *Id.* Canadian authorities issued a warrant for his arrest in November 2022. *Id.* In December 2022, Canadian investigators sent Saed a copy

---

[1] The Court cites the parties' briefs rather than the underlying record in order to avoid citing sealed or confidential material and because the facts set forth here are undisputed.

1  of charges against him via email. *Id.* The same month, Saed told investigators during a phone call
2  that he had received notice of the charges and that he would wrap up his affairs in the United
3  States and return to Canada. *Id.* Saed never returned to Canada and instead remained in the
4  United States. He was arrested in this district on February 2, 2024, after Canada requested his
5  provisional arrest with a view towards extradition pursuant to its treaty[2] with the United States and
6  18 U.S.C. § 3184. ECF No. 27 at 6.

7  Following briefing and a detention hearing, the magistrate judge ordered Saed's release on
8  bail subject to certain conditions pending his extradition proceedings. ECF No. 17. The
9  Government moved to stay the release order, ECF No. 18, and this Court granted the motion to
10 stay and set a briefing schedule, ECF No. 21. On March 11, 2024, the Government moved to
11 vacate the release order. ECF No. 27. Saed filed his opposition on March 12, 2024, ECF No. 28,
12 and the Government filed its reply on March 13, 2024, ECF No. 29. The Court heard oral
13 argument on March 15, 2024.

**II.   JURISDICTION AND STANDARD OF REVIEW**

This Court reviews de novo a magistrate judge's bail decision in an extradition case. *United States v. Al-Nouri*, 983 F.3d 1096, 1098–99 & n.2 (9th Cir. 2020).

**III.  LEGAL STANDARD**

"There is a presumption against bail in an extradition case and only 'special circumstances' will justify bail." *Salerno v. United States*, 878 F.2d 317, 317 (9th Cir. 1989) (citing *Wright v. Henkel*, 190 U.S. 40, 63 (1903)); *accord In re Requested Extradition of Kirby*, 106 F.3d 855, 858 (9th Cir. 1996). "Because the primary concern of the United States is to return the person sought to the requesting country, the court will not grant bail if the person is a risk of flight or danger." *In re Extradition of Nacif-Borge*, 829 F. Supp. 1210, 1221 (D. Nev. 1993); *see also In re Requested Extradition of Kirby*, 106 F.3d at 862–63. The person to be extradited bears the burden of showing that he is neither a danger to the community nor a flight risk. *In re Extradition of Nacif-*

---

[2] Treaty on Extradition Between the United States of America and Canada, U.S.-Can., Dec. 3, 1971, 27 U.S.T. 983, as amended by Protocol Amending the Extradition Treaty with Canada, U.S.-Can., Jan. 11, 1988, S. Treaty Doc. No. 101-17 (1990); and Second Protocol Amending the Extradition Treaty with Canada, U.S.-Can., Jan. 12, 2001, S. Treaty Doc. No. 107-11 (2002).

*Borge*, 829 F. Supp. at 1214. "The upshot is that an extraditee, in addition to proving that he's not a danger to the community and not a flight risk, must demonstrate special circumstances justifying his release." *In re Extradition of Manrique*, 442 F. Supp. 3d 1172, 1175 (N.D. Cal. 2020) (citing *In re Extradition of Santos*, 473 F. Supp. 2d 1030, 1035 (C.D. Cal. 2006)). Some courts require that this showing be made by a preponderance of the evidence; others have required "clear and convincing evidence." *In re Extradition of Manrique*, 442 F. Supp. 3d at 1175. The Court assumes for purposes of this case that the preponderance of the evidence standard applies. *See id.*

## IV. DISCUSSION

The Court begins by considering whether Saed has shown by a preponderance of evidence that he is not a flight risk. For the reasons discussed below, the Court finds that he has not.

First, Saed has remained in the United States for more than a year since assuring Canadian authorities in December 2022 that he planned to return to Canada to face the charges against him. Saed attempts to mitigate this fact by arguing that he was not forbidden to travel when he relocated to the United States in February 2022 and that he did not know when he left that charges would be brought against him. ECF No. 28 at 13. He notes that he has lived and worked under his true identity in the United States and has not changed his contact information. *Id.*

These assertions echo those considered by the district court in *In re Extradition of Beresford-Redman*, 753 F. Supp. 2d 1078, 1085–88 (C.D. Cal. 2010). The person to be extradited in that case argued in part that "because he had not been named as a suspect nor were any formal proceedings initiated against him at the time of his departure, his return to the United States was not an improper effort to flee from justice." *Id.* at 1085. He also offered the facts that he used legitimate travel documents to enter the United States and that he "openly resided" in Los Angeles as evidence that he would not flee pending extradition. *Id.*; *cf. United States v. Leitner*, 784 F.2d 159, 160 (2d Cir. 1986) (per curiam) (denying bail pending extradition to fugitive who had been "living openly" in the United States for eighteen months after leaving Israel). The court nonetheless concluded that the extraditee had not met his burden and was a flight risk, observing that "[a]lthough [he] could return to Mexico and voluntarily surrender, he ha[d] not done so." *In re Extradition of Beresford-Redman*, 753 F. Supp. 2d at 1091.

1    Saed also emphasizes that Canadian authorities have not attempted to contact him by email
2    or phone for the past fourteen months. ECF No. 28 at 7. The implication is that if the Canadian
3    authorities viewed the charges as serious, or thought that Saed was a flight risk, they would have
4    made more of an effort to call or email. This argument is not persuasive. First, it is clear from the
5    impending extradition proceedings that Canada does view the charges as serious. Second, while
6    Canadian authorities could perhaps have attempted to call or email Saed, they knew that he had
7    reneged on his promise to them to stay in touch and then return to the country. Calling or
8    emailing him would not have been sufficient to bring him back to Canada. For that, they needed
9    to initiate extradition proceedings—which they did. Finally, Saed was aware of the pending
10   charges and could have returned to Canada, as he had agreed to do, at any time. The suggestion
11   that he would have done so if only Canadian authorities had contacted him more frequently is
12   implausible.
13   Saed asserts that he "lacks the financial ability to flee" and that, in any event, he would not
14   flee because he grew up in the Napa area and has social ties there. ECF No. 28 at 13. Saed also
15   argues that the sureties paid by his grandmother in Canada and ex-girlfriend in California, along
16   with the willingness of his two long-time friends to act as co-signers or custodians, will ensure that
17   he does not flee. *Id.* at 13–14. Neither of these arguments overcome the risks evidenced by the
18   flight conduct outlined above.
19   The Government identifies several other factors supporting a finding that Saed is a flight
20   risk. For example, Saed has no dependents or current familial ties in the United States; the
21   criminal charges against him are serious; and the charges carry a maximum possible sentence of
22   life imprisonment. ECF No. 27 at 12–13. The Court agrees that these facts weigh in favor of
23   finding that Saed is a flight risk. The Court also observes that based on the Canadian prosecutor's
24   declaration filed in this case, Saed can expect that she will seek his remand to detention when he
25   arrives there. ECF No. 15 ¶ 8 (explaining that because of Saed's departure from the United States
26   and refusal to return to Canada despite receiving notice of the warrant for his arrest, the Canadian
27   authorities' "revised position on bail is now to oppose bail and seek his detention until the
28   conclusion of his trial. [Saed] is a flight risk"). Notably, the same prosecutor agreed—by

4

contrast—that the Canadian court could release Saed's co-defendants on bond. *Id.* ¶ 5(j). That Saed faces proceedings in Canada in which the prosecutor will seek his detention increases his incentive to flee.

In short, the Court finds that Saed has not met his burden to demonstrate that he is not a flight risk, which precludes his release on bail pending extradition. *See In re Extradition of Nacif-Borge*, 829 F. Supp. at 1221. In light of that finding, the Court need not consider whether this case presents special circumstances. The government's motion to vacate the release order is GRANTED, and Saed is detained.

**IT IS SO ORDERED.**

Dated: March 15, 2024

JON S. TIGAR
United States District Judge